**CASE NO. 20-40637**

**IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

**RHONDA M. McLEMORE,**
*Plaintiff - Appellant*

**v.**

**WALMART INCORPORATED L.L.C. TEXAS STORES;
JASON W. STEWART, MARKET MANAGER;
CINTHYA M. KNOWLTON, STORE MANAGER;
RAQUEL NUNEZ, MARKET HR; JOSEPHINE JACOBS,**
*Defendants – Appellees*

**ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS, SHERMAN DIVISION
USDC CASE NO. 4:18-CV-00689
HONORABLE AMOS L. MAZZANT, III PRESIDING**

**BRIEF FOR APPELLEES**

NANCY L. WATERS
nwaters@gpd.com
JAMES N. ZOYS
jzoys@gpd.com
GEARY, PORTER & DONOVAN, P.C.
16475 Dallas, Parkway, Suite 400
Addison, Texas 75001-6837
(972) 931-9901
(972) 931-9208 (Fax)

ATTORNEYS FOR APPELLEES

CASE NO. 20-40637

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

**RHONDA M. McLEMORE,**
*Plaintiff - Appellant*

v.

**WALMART INCORPORATED L.L.C. TEXAS STORES;
JASON W. STEWART, MARKET MANAGER;
CINTHYA M. KNOWLTON, STORE MANAGER;
RAQUEL NUNEZ, MARKET HR; JOSEPHINE JACOBS,**
*Defendants – Appellees*

## CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certify that the following listed persons and entities as described in the fourth sentence of 5TH CIR. R. 28.2.1 have an interest in the outcome of this case.  These representations are made in order that the Judges of this Court may evaluate possible disqualification or recusal.

| Plaintiff - Appellant: | *Pro Se* |
|---|---|
| Rhonda M. McLemore | |
| Defendants - Appellees: | Counsel for Defendants - Appellees: |
| Walmart Incorporated L.L.C. Texas Stores | Nancy L. Waters |
| | James N. Zoys |
| | GEARY, PORTER & DONOVAN, P.C. |
| Jason W. Stewart | 16475 Dallas Parkway, Suite 400 |
| | Addison, Texas 75001 |

| | |
|---|---|
| Cinthya M. Knowlton<br><br>Raquel Nunez<br><br>Josephine Jacobs | |
| Wal-Mart Stores Texas, LLC<br><br>Walmart Inc. | Correct name of Corporate Defendant<br><br>Parent Corporation of Wal-Mart Stores Texas, LLC |

/s/ Nancy L. Waters
Nancy L. Waters
James N. Zoys
GEARY, PORTER & DONOVAN, P.C.
16475 Dallas, Parkway, Suite 400
Addison, Texas 75001-6837

ATTORNEYS OF RECORD FOR
APPELLEES

## STATEMENT REGARDING ORAL ARGUMENT

Defendants-Appellees (hereafter "Defendants" or "Appellees") do not believe the issues presented herein are sufficiently complex or unique to warrant oral argument. The undisputed facts are adequately presented in the record on appeal and the controlling legal principles are well established. However, in the event that this Court grants oral argument in this case, respectfully gives notice of its intent to participate in such argument.

## TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS ......................................................2

STATEMENT REGARDING ORAL ARGUMENT .............................................4

TABLE OF CONTENTS.......................................................................................5

TABLE OF AUTHORITIES .................................................................................9

JURISDICTIONAL STATEMENT .....................................................................16

STATEMENT OF THE ISSUES..........................................................................16

STATEMENT OF THE CASE..............................................................................18

    1.  Course of proceedings below ....................................................................18

    2.  Statement of Facts.......................................................................................19

        A. Plaintiff's Hiring and Training on Walmart Policies and
           Procedures ...........................................................................................19

        B. Walmart Policies .................................................................................20

           (1)Walmart's Discrimination and Harassment Prevention Policy,
               Statement of Ethics and Open Door Policy.......................................20

           (2)Walmart's Disciplinary Action Policy ...............................................21

           (3)Violence-Free Workplace Policy .......................................................22

        C. Plaintiff's employment history after March 2018 when she alleges the
           discrimination began ............................................................................23

           (1) Plaintiff requests admission to Management Training Program .......24

           (2) Investigation of Plaintiff's Complaints.............................................27

        D. Plaintiff's Charge of Discrimination .....................................................28

E. Plaintiff's Termination ...........................................................31

F. Facts Alleged by Plaintiff to support her claims ....................32

   (1) Deprivation of Civil Rights and Conspiracy to Interfere .................32

   (2) Race Discrimination under Title VII and Age Discrimination under ADEA ....................................................................36

   (3) Defamation claim against Knowlton and Jacobs ...............37

   (4) Retaliation under Title VII .................................................37

SUMMARY OF THE ARGUMENT ....................................................38

STANDARD OF REVIEW ...................................................................39

ARGUMENT AND AUTHORITIES...................................................42

   A. The District Court properly held that McLemore failed to demonstrate a conspiracy proscribed by 42 U.S.C. § 1985 ..............42

   B. The District Court properly held that Plaintiff's claims against Defendants Jacobs, Knowlton, Nunez and Stewart under Title VII and against Knowlton and Stewart under the ADEA should be Dismissed ........................................................45

   C. The District Court properly held that Defendants are entitled to Summary judgment as a matter of law on Plaintiff's race Discrimination claims under Title VII ...............................................47

   (1) Plaintiff has not established a *prima facie* case of race Discrimination under Title VII ......................................................48

      a. Plaintiff cannot establish that Others Similarly Situated were Treated More Favorably.................................................49

   (2) Walmart has articulated a legitimate non-discriminatory reason for the employment actions taken against Plaintiff.....................51

(3) Walmart's legitimate, non-discriminatory reason for the employment actions taken against Plaintiff was not pretext, and her age and race were not motivating fac tors in the employment actions ....................................................................52

D.  The District Court properly held that Walmart is entitled to summary judgment as a matter of law on Plaintiff's hostile work environment claim under Title VII ....................................................53

(1) Plaintiff has not established a *Prima Facie* Case of Hostile Work Environment ....................................................................................53

(2) Plaintiff was not subjected to unwelcome harassment based on her race ....................................................................................53

(3) Plaintiff has not established that a term, condition or privilege of employment was affected by the alleged harassment...............55

(4) Walmart was made aware of Plaintiff's allegations of harassment and took prompt remedial action ....................................................58

E.  The District Court properly held that Defendants are entitled to summary judgment as a matter of law on Plaintiff's Retaliation Claim under Title VII....................................................................................59

(1) Plaintiff has not established a *Prima Facie* case of Retaliation ....................................................................................59

a.  Plaintiff's Complaints Were Not Protected Conduct...............60

b.  Plaintiff cannot establish that there is a causal link between any protected activity and an adverse employment action ......62

(2) Walmart has articulated a legitimate non-discriminatory reason for the employment actions taken against Plaintiff, and Walmart's legitimate, non-discriminatory reason for Plaintiff's employment actions was not pretext .................................................................64

F.  The District Court properly held that Plaintiff's claims against Defendants Knowlton and Jacobs for defamation should be dismissed ............................................................... 65

G.  The District Court properly held that Defendants Walmart, Knowlton and Stewart are entitled to summary judgment as a matter of law on Plaintiff's ADEA claim .......................................... 69

H.  The District Court properly denied McLemore's motion to amend her complaint to add "Uday Kuchimanchi of Price Waterhouse Coopers of Dallas" as a defendant .................................................... 71

I.  The District Court properly denied Plaintiff's Amended Motion for Summary Judgment ....................................................... 73

CONCLUSION .............................................................................. 73

CERTIFICATE OF SERVICE .............................................................. 75

CERTIFICATE OF COMPLIANCE ..................................................... 76

# TABLE OF AUTHORITIES

**Cases**                                                                    **Page(s)**

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986) .................................................................................. 40-41

*Baker v. Am. Airlines, Inc.*,
   430 F.3d 750 (5th Cir. 2005 ..................................................................... 59

*Bienkowski v. Am. Airlines, Inc.*,
   851 F.2d 1503 (5th Cir. 1988) ................................................................. 70

*Blow v. City of San Antonio*,
   236 F.3d 293 (5th Cir. 2001) ................................................................... 39

*Brooks v. Firestone Polymers, LLC*,
   70 F. Supp. 3d 816 (E.D. Tex. 2014) ............................................. 47, 49, 54, 56

*Bouie v. Equistar Chems. LP*,
   8 Fed. Appx. 233 (5th Cir. 2006) .......................................................... 50

*Burch v. Coca-Cola Co.*,
   119 F.3d 305 (5th Cir. 1997) ................................................................... 67

*Burrell v. Dr. Pepper/Seven Up Bottling Group, Inc.*,
   482 F.3d 408 (5th Cir. 2007) ................................................................... 48

*Bryant v. Compass Group USA Inc.*,
   413 F.3d 471 (5th Cir. 2005) ................................................................... 49

*Byers v. Dallas Morning News, Inc.*,
   209 F.3d 419 (5th Cir. 2000) ................................................................... 61

*Carlton v. Steele*,
   278 Fed. Appx. 352 (5th Cir. Tex. 2008) ............................................. 66

*Carrington v. Des Moines*,
   481 F.3d 1046 (8th Cir. 2007) ................................................................ 62

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986) ................................................................ 40-41, 68

*Consolidated Metal Products, Inc. v. American Petroleum Institute*,
846 F.2d 284 (5th Cir. 1988) ........................................................ 41

*Conti Commodity Services, Inc. v. Ragan*,
63 F.3d 438 (5th Cir. 1995) .......................................................... 68

*Clover v. Total Sys. Servs., Inc.*,
176 F.3d 1346 (11th Cir. 1999) .................................................... 61

*Davin v. Delta Air Lines, Inc.*,
678 F.2d 567 (5 Cir. 1982) ........................................................... 50

*Denton Publ'g v. Boyd*,
460 S.W.2d 881 (Tex. 1970) ......................................................... 66

*Deubert v. Gulf Fed. Sav. Bank*,
820 F.2d 754 (5th Cir. 1987) ........................................................ 44

*Dotson v. Gulf*,
2006 U.S. Dist. LEXIS 1893 (S.D. Tex. Jan. 9, 2006) .................... 50

*Douglass v. United Servs. Auto Ass'n*,
79 F.3d 1415 (5th Cir. 1996) ........................................................ 52

*Duffy v. Leading Edge Prods., Inc.*,
44 F.3d 308 (5th Cir. 1995) .......................................................... 67

*Dunn v. Hunting Energy Services*,
288 F.Supp.3d. 749 (S.D. Tex. 2017) ........................... 47, 54, 56, 60

*EEOC v. Boh Bros. Cost. Co., LLC*,
731 F.3d 444 (5th Cir. 2013) ........................................................ 53

*Faragher v. City of Boca Raton*,
524 U.S. 775, 118 S. Ct. 2275,141 L. Ed. 2d 662 (1998) ................ 57

*Fierro v. Knight Transp.*,
   2012 U.S. Dist. LEXIS 133249 (W.D. Tex. Sept. 18, 2012) ............................. 46

*Forsyth v. Barr*,
   19 F.3d 1527 (5th Cir. 1994), cert denied,
   513 U.S. 871, 115 S.Ct. 195 (1994)............................................................. 40-41

*Frakes v. Crete Carrier Corp.*,
   579 F.3d 426 (5th Cir. 2009) ....................................................................... 66-68

*Gallentine v. Hous. Auth. Of City of Port Arthur, Tex.*,
   919 F.Supp.2d 787 (E.D. Tex. 2013) .................................................................. 46

*Gee v. Principi*,
   289 F.3d 342 (5th Cir. 2002) ............................................................................. 60

*Goudeau v. Nat'l Oilwell Varco, L.P.*,
   793 F.3d 470, 474 (5th Cir. 2015) ..................................................................... 70

*Grant v. Lone Star Co.*,
   21 F.3d 649 (5th Cir. 1994), Cert. Denied., 513 U.S. 1015 (1994)............... 46, 71

*Greene v. Potter*,
   240 Fed. Appx. 657 (5th Cir. 2007)................................................................... 49

*Gross v. FBL Fin. Servs., Inc.*,
   557 U.S. 167 (2009)........................................................................................... 70

*Halbert v. City of Sherman*,
   33 F.3d 526 (5th Cir. 1994) ............................................................................... 66

*Hazen Paper Co. v. Biggins*,
   507 U.S. 604 (1993)........................................................................................... 70

*Hernandez v. Yellow Transp., Inc.*
   670 F.3d 644, 651 (5th Cir. 2012) ................................................................. 55-56

*Hilliard v. Ferguson*,
   30 F.3d 649 (5th Cir. 1994) ........................................................................... 43-44

*Horiast v. Doctor's Hosp. Of Opelousas*,
   255 F.3d 261 (5th Cir. 2001) ................................................................ 44

*Horton v. City of Houston*,
   179 F.3d 188 (5th Cir. 1999) ............................................................... 39

*Houston v. Grocers Supply Co.*,
   625 S.W.2d 798, 800 (Tex. App. – Houston [14th Dist.] 1981, no writ)............ 66

*Jackson v. Honeywell Int'l Inc.*,
   601 Fed. Appx. 280, 2015 U.S. App., LEXIS 2258,
   126 Fair Empl. Prac. Cas. (BNA) 525, 25 WL 585882 (5th Cir. 2015)............. 62

*Jennings v. O'Reilly Auto Enterprises, LLC*,
   No. 4:17-CV-00837, 2019 WL 286740 (E.D. Tex. Jan. 22, 2019) .................... 73

*Jones v. Dallas County*,
   2013 U.S. Dist. LEXIS 17238 (N.D. Tex. Dec. 6, 2013) ................................... 46

*Kinney v. Weaver*,
   367 F.3d 337 (5th Cir. 2004) ........................................................... 42-43

*Kipp v. Mo. Highway & Transp. Comm'n,*
   280 F.3d 893 (8th Cir. 2002) ............................................................... 63

*Lauderdale v. Tex. Dep't of Criminal Justice*,
   512 F.3d 157 (5th Cir. 2007) ............................................................... 57

*Laxton v. Gap, Inc.,*
   333 F.3d 572 (5th Cir. 2003) ............................................................... 47

*Little v. Liquid Air Corp.,*
   37 F.3d 1069, 1075 (5th Cir. 1994) ..................................................... 40

*Long v. Eastfield Coll.*,
   88 F.3d 300 (5th Cir. 1996) ........................................................... 60-61

*Manaway v. Med. Ctr. Of Southeast Tex.*,
   No. 1:09-CV-356, 2011 U.S. Dist. LEXIS 92 (E.D. Tex. Jan. 3, 2011) ............. 48

*Matsushita Electrical Industrial Co. v. Zenith Radio Corp.*,
  475 U.S. 574 (1986) .............................................................................. 41

*Marathon Oil Co. v. Salazar*,
  682 S.W.2d 624 (Tex. App. – Houston [1st Dist.] 1984) ..................................... 66

*Mayberry v. Vought Aircraft Co.*,
  55 F.3d 1086 ..................................................................................... 49

*McCoy v. City of Shreveport*,
  492 F.3d 551 (5th Cir. 2007) ................................................................. 63

*McDonnell Douglas Corp. v. Green*,
  411 U.S. 792 (1973) ...................................................................... 47, 70

*Mitre v. La Plaza Mall*,
  857 S.W.2d 752 (Tex. App.—Corpus Christi 1993, writ denied) ....................... 67

*Montoya v. FedEx Ground Package Sys., Inc.*,
  614 F.3d 145 (5th Cir. 2010) .......................................................... 43-44

*Patton v. United Parcel Serv.*,
  910 F. Supp. 1250 (S.D. Tex. 1995) ....................................................... 68

*Perez v. Tex. Dep't of Criminal Justice*,
  395 F.3d 206 (5th Cir. 2004) ................................................................. 50

*Rachid v. Jack in the Box, Inc.*,
  376 F3d 305 (5th Cir. 2004) ................................................................. 70

*Ramsey v. Henderson*,
  286 F.3d 264 (5th Cir. 2002) ................................................................. 54

*Randall's Food Mkts v. Johnson*,
  891 S.W.2d 640 (Tex. 1995) .............................................................. 66-67

*Reeves v. Sanderson Plumbing Prods., Inc.*,
  530 U.S. 133 (2000) (alteration in original) .......................................... 69-70

*Schimek v. MCI, Inc.*,
   2006 WL 2252034 (N.D. Tex. Aug. 7, 2006) ...................................................... 59

*Shearson Lehman Hutton, Inc. v. Tucker*,
   806 S.W.2d 914 (Tex. App.—Corpus Christi 1991) .......................................... 68

*Simmons v. Lyons*,
   746 F.2d 265 (5th Cir. 1984) ............................................................................... 40

*Smith v. Int'l Paper Co.*,
   523 F.3d 845 (8th Cir. 2008) ............................................................................... 61

*Strong v. University Healthcare System, LLC*,
   482 F.3d 802 (5th Cir. 2007) ............................................................................... 63

*Stults v. Conoco, Inc.*,
   76 F. 3d 651 (5th Cir. 1996) .......................................................................... 46, 71

*Topalian v. Ehrmann*,
   954 F.2d 1125 (5th Cir. 1991) ............................................................................. 40

*United States v. Coleman*,
   609 F.3d 699 (5th Cir. 2010) ............................................................................... 45

*Waggoner v. City of Garland*,
   987 F.2d 1160 (5th Cir. 1993) ....................................................................... 52-53

*Wallace v. Methodist Hosp. Sys.*,
   271 F.3d 212 (5th Cir. 2001) ............................................................................... 49

*Ward v. Bechtel Corp.*,
   102 F.3d 199 (5th Cir. 1997) ............................................................................... 40

*Washburn v. Harvey*,
   504 F.3d 505 (5th Cir. 2007) ............................................................................... 59

*WFAA-TV, Inc. v. McLemore*,
   978 S.W.2d 568 (Tex. 1998) ................................................................................ 65

*Williams-Boldware v. Denton Cty.*,
   741 F.3d 635 (5th Cir. 2014) ................................................................. 58

*Young Buisson v. Bd. Of Supervisors of La. Cmty. & Tech. College Sys.*,
   2014 U.S. App. LEXIS 21356 (5th Cir. 2014) ...................................... 57

*Zarate v. Cortinas*,
   553 S.W.2d 652 (Tex. Civ. App. 1977) .......................................... 66-67

## <u>Statutes</u>

18 U.S.C. § 371 ...................................................................................... 45

28 U.S.C. § 1291 .................................................................................... 16

29 U.S.C. § 623(a)(1) ............................................................................ 69

42 U.S.C. § 1985 ............................................................................ *passim*

42 U.S.C. § 1985(2)(3) ..................................................................... 42, 43

42 U.S.C. § 2000e-5(f)(3) ..................................................................... 16

Civil Rights Act of 1964 Title VII ................................................. *passim*

Age Discrimination in Employment Act of 1967, as amended ......... 17-18

## <u>Rules</u>

Fed. R. Civ. P. 15 ................................................................................... 72

Fed. R. Civ. P. 16(b) .............................................................................. 72

Fed. R. Civ. P. 56 ................................................................................... 41

Fed. R. Civ. P. 56(c) ............................................................................... 40

Fed. R. Civ. P. 56(d) .............................................................................. 42

## JURISDICTIONAL STATEMENT

The District Court had jurisdiction under 42 U.S.C. § 2000e-5(f)(3). This Court has jurisdiction because this is an appeal from a final order under 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUES

Appellees deny that Plaintiff-Appellant Rhonda M. McLemore ("Plaintiff," "Appellant" or "McLemore") properly framed the issues in the statement of issues section of her Brief.[1] (Appellant's Brief, Document: 00515827407, p. 9). The issues before this Court are as follows:

1.     Whether the District Court erred in granting Appellees' Motion for Summary Judgment on McLemore's claim for "Conspiracy Deprivation of Civil Rights" under 42 U.S.C. § 1985.

---

[1] Pursuant to the Clerk's Order of April 19, 2021, the deadline for Appellant to file a sufficient brief is April 26, 2021, the same deadline applicable to Appellees' Brief. Therefore, Appellees' Brief is being filed in response to the brief filed by Appellant on April 19, 2021 ("Appellant's Brief), which was deemed insufficient by the Clerk. There are numerous technical deficiencies in Appellant's Brief (e.g., (a) incorrect page numbers in the Table of Contents; (b) only 6 of the 25 cases listed in the Table of Authorities are actually cited in the Brief and then not on the page listed; (c) at least 36 additional cases are cited in the Brief, none of which is listed on the Table of Authorities; and (d) there are only 9 cites to the Record, none of which is correct. Substantively, however, Appellant's Brief is replete with incoherent and irrelevant legal analyses and statements and assertions that are unsupported by the record and unrelated to the findings of the District Court from which this appeal is taken. For purposes of a complete record in this appeal, Appellees' Brief addresses the recommendations of the Magistrate Judge on the legal issues identified in Defendants' Motion for Summary Judgment, Plaintiff's Amended Motion for Summary Judgment and ancillary motions, which recommendations were adopted by the District Court in properly entering Final Judgment dismissing all of Plaintiff's claims with prejudice.

2.      Whether the District Court erred in granting Appellees' Motion for Summary Judgment dismissing McLemore's claims for discrimination based on race, hostile work environment and retaliation under Title VII of the Civil Rights Act of 1964.

3.      Whether the District Court erred in granting Appellees' Motion for Summary Judgment dismissing McLemore's state law claim for defamation *per se* against Defendants Knowlton and Jacobs.

4.      Whether the District Court erred in granting Appellees' Motion for Summary Judgment dismissing McLemore's claims under the Age Discrimination in Employment Act.

5.      Whether the District Court erred in denying McLemore's motion to amend her complaint to add "Uday Kuchimanchi of Price Waterhouse Coopers of Dallas" as a defendant.

6.      Whether the District Court erred in denying McLemore's Motion for Summary Judgment.

## STATEMENT OF THE CASE

**1.    Course of proceedings below**

On October 1, 2018, McLemore, proceeding *pro se*, filed her Original Complaint. (ROA.21-24) in the Eastern District of Texas, Sherman Division. After filing numerous amended Complaints, and naming additional individual defendants, on March 21, 2019, McLemore filed her Fourth Amended Complaint (ROA.459-475) against Defendants, asserting the following claims: (1) Conspiracy Deprivation of Civil Rights pursuant to 42 U.S.C. § 1985; (2) discrimination, retaliation and hostile work environment in violation of Title VII against all Defendants; (3) defamation p*er se* against Defendants Knowlton and Jacobs; and (4) discrimination in violation of the Age Discrimination in Employment Act of 1967, as amended ("ADEA") against Defendants Walmart, Knowlton and Stewart.

On December 20, 2019, Defendants filed a Motion for Summary Judgment on each of McLemore's claims. (ROA.876-911) The same day, McLemore filed her "Motion for Amended Summary Judgment" seeking summary judgment as to Defendants' affirmative defenses. (ROA.1132-1145). Both parties filed responses (ROA.1612-1617) and (ROA.1621-1633) and Defendants filed a Reply (ROA.2262-2269).

On July 3, 2020, the United States Magistrate Judge issued a Report and Recommendation ("Magistrate's Report"), recommending that Defendants' Motion

for Summary Judgment be granted, that Plaintiff's Motion for Amended Summary Judgment be denied and that each of McLemore's remaining claims be dismissed with prejudice. (ROA.3116-3156). On August 21, 2020, the District Court issued a Memorandum adopting the Report and Recommendation of the Magistrate (ROA.3187-3189)[2] and entered Final Judgment dismissing all of Plaintiff's claims with prejudice. (ROA.3190).

On September 21, 2020, McLemore filed Notice of Appeal from the Final Judgment. (ROA.3191-3192).

## 2.     Statement of Facts

### A.     Plaintiff's Hiring and Training on Walmart Policies and Procedures

On November 10, 2012, McLemore, an African American female, was hired as a Cashier at Walmart Store #5866 located in Frisco, Texas.  (ROA.879, 1043). Plaintiff was 47 at the time she was hired by Defendant Walmart.  (ROA. 879, 916-917).   On March 1, 2013, McLemore was promoted to the position of Customer Service Manager. (ROA.880, 917, 1043).   From 2013 to 2016, McLemore held several positions until once again being promoted to GM Support Manager on October 1, 2016.  (ROA.880, 916-919, 1043).

---

[2] McLemore filed Objections to the Magistrate's Report on July 27, 2020 (ROA.3164-3179) and Defendants responded on August 3, 2020 (ROA.3180-3185). McLemore made no specific objection to the Magistrate's Report; rather the District Court found that the majority of Plaintiff's Objections were "nonsensical fragments and clauses," unrelated to the Magistrate's Report's findings, and overruled Plaintiff's Objections. (ROA.3187-3189).

On June 26, 2016, Plaintiff was issued a coaching for Respect for the Individual and was instructed to respect every customer and associate within the Store. (ROA.880, 1043, 1110-1119).

While employed with Walmart, Plaintiff underwent orientation and received training on Walmart's policies and procedures. (ROA.880, 920, 1043). Plaintiff was also provided with access and continued training on Walmart's policies throughout her employment. (ROA.880, 920, 1043). Plaintiff admitted that her training included the completion of computer-based learning modules ("CBLs") on Walmart policies and procedures, which specifically included training on Walmart's discrimination and workplace violence policies. (ROA.880, 920).

## B.     WALMART POLICIES

### (1) Walmart's Discrimination and Harassment Prevention Policy, Statement of Ethics and Open Door Policy

Walmart is an equal opportunity employer that provides associates and managers with training on the prevention, identification, and investigation of possible discrimination, retaliation, and harassment. (ROA.880, 1041, 1051-1054).

Walmart's Discrimination and Harassment Prevention Policy strictly prohibits unlawful harassment, discrimination, and retaliation in the workplace. (ROA.880, 1041, 1051-1054). Walmart also maintains a Statement of Ethics Policy preventing discrimination and retaliation in the workplace. (ROA.880-881, 1041, 1056-1093). To ensure strict adherence to these policies, associates are

provided with procedures for reporting allegations of discrimination, harassment, and retaliation. (ROA.880, 1041, 1056-1093). For example, associates are provided with a telephone hotline to confidentially report possible ethical violations ("Global Ethics Helpline"). (ROA.880, 1041, 1056-1093). Further, all associates and members of management are trained on Walmart's Harassment Prevention and anti-retaliation policies. (ROA.880-881, 1041, 1051-1093).

Walmart also maintains an Open Door Communications Policy ("Open Door Policy") that contains reporting and investigation procedures to encourage associates to report incidents of perceived discrimination, retaliation, and harassment. (ROA.881, 1042, 1095-1097). The Open Door Policy encourages associates to initiate open door communications with their immediate supervisor to obtain the quickest resolution of an issue. (ROA.881, 1042, 1095-1097). However, if an associate believes her immediate supervisor has not satisfactorily resolved her concern, she may contact any other supervisor or manager, including senior management. (ROA.881, 1042, 1095-1097).

### (2) Walmart's Disciplinary Action Policy

Walmart's Disciplinary Action Policy is a progressive discipline policy designed to inform an associate when she is not meeting the requirements and expectations of her position. (ROA.881, 1042, 1099-1101). The Disciplinary Action Policy, which acts strictly as a guide, is comprised of four levels of

discipline that an associate may receive depending on the severity of the infraction committed: First Written Coaching, Second Written Coaching, Third Written Coaching, and Termination. (ROA.881, 1042, 1099-1101). In addition to the four levels of discipline, certain gross misconduct can result in immediate termination under the Disciplinary Action Policy. (ROA.881, 1042, 1099-1101). Examples of gross misconduct that may result in immediate termination include "intentional failure to follow Walmart policy."

### (3) Violence-Free Workplace Policy

Walmart maintains a Violence-Free Workplace Policy and Violence-Free Management Guidelines ("Management Guidelines"). (ROA.881, 1042, 1102-1108).

Walmart is committed to providing a safe and violence free workplace for its associates. (ROA.881, 1042, 1102-1108). Walmart policy prohibits any form of violence or threat of violence in or affecting the workplace and associates. (ROA.1042, 1102-1108). This includes, but is not limited to, any conduct or communication (whether direct or indirect) which: (1) harms, damages, injures, harasses, intimidates, bullies, threatens, stalks, taunts, forces, coerces, restrains or confines another person; or (2) reasonably causes another person to fear for her health or safety. (ROA.881-882, 1042, 1102-1108).

Walmart provides its manager and supervisors additional Management Guidelines to provide guidance in administering the policy (ROA.882, 1042, 1106-1108).  The Management Guidelines provide as follows:

> All supervisors and/or salaried members of management should take any report of conduct prohibited by this policy seriously.  If you are aware of a potential violation of this policy, you must take immediate action in accordance with the appropriate Threat Management Guideline.

(ROA.882, 1042, 1106-1108).   The Management Guidelines further instruct managers who are investigating an alleged violation of the policy to refer to the Threat Management Center of Excellence for additional assistance. McLemore completed a CBL training on this policy during her employment with Walmart. (ROA.882, 1042, 1106-1108).

### C.     Plaintiff's employment history after March 2018 when she alleges the discrimination began

In early 2018, Leonel Casias,  the Store Manager over Store No. 5866 went out unexpectedly on a leave of absence, and Defendant Cinthya Knowlton ("Knowlton") (Age 43, Hispanic) was placed in the Store to serve as interim Store Manager.  (ROA.882, 921).  Plaintiff has testified that her claims are based on events that allegedly occurred after Knowlton took over as the Store Manager in or around March 2018.   (ROA.882, 927).

As a Support Manager, Plaintiff reported to Assistant Managers at Store No. 5866, who reported to Shift Managers.  The Store Manager is the next and last

level of management in the chain of command at the Store level. Human Resources Managers supporting the Store include Joedi Graham ("Graham"), the Regional Human Resources Director, and Carlos Sanchez ("Sanchez"), the Divisional Human Resource Manager. (ROA.882, 1044).

### (1) Plaintiff requests admission to Management Training Program

In March and April 2018, notification was sent out to all associates in the Region that a Quarterly Regional Selection event for the Assistant Manager Trainee position (the "Trainee Position") would be open and encouraged current associates to indicate their interest through Walmart's Career Preference System. (ROA.883, 963-964,1044). Associates were notified that "candidates who meet minimum qualifications and who have demonstrated leadership behaviors indicating they are ready now for the Assistant Manager role will be invited to attend a Quarterly Regional selection event." (ROA.883, 963-964,1044).

On March 20, 2018, Plaintiff completed her assessment and submission for the Trainee Position. (ROA.883, 1044). However, because Knowlton had only been interim Store Manager for a short time, it was decided that, before Plaintiff could be considered for the Trainee Position, it was necessary to obtain input from the Market team and Assistant Managers at Store No. 5866 to determine whether she had the necessary leadership qualifications to be advanced to the training program. (ROA.883, 1044).

After this input was received, it was determined that Plaintiff's recommendation to the program should be delayed because of concerns with how she treated associates, past insubordination to management and failure to always follow directives by the management team. (ROA.883, 1044-1045).

On April 18, 2018, the Company met with Plaintiff to discuss her potential for advancement in the Company. (ROA.883, 1045). During this meeting, it was explained to Plaintiff that, due to reports about Plaintiff's performance and communication skills from Assistant Managers, Knowlton and Defendant Jason Stewart ("Stewart") felt that Plaintiff could benefit from working with an assigned mentor to strengthen her management skills, and they encouraged Plaintiff to apply for a Trainee Position at a later date. (ROA.883, 1045).

There was a total of 15 candidates from eight stores who submitted interest in the Trainee Position, and four of the 15 associates were found not ready by their Store Managers. (ROA.884, 1045). Of the 11 who were considered for the Trainee Position, seven were black, three were Asian and one was Caucasian. This included Erica Hamilton, a black female associate at Store No. 5866 who was ultimately hired for the position. (ROA.884, 1045).

On May 10, 2018, Plaintiff emailed Knowlton requesting an open door on the decision and the reasons for her not being recommended for the Trainee Position. (ROA.884, 1045). Plaintiff stated that she believed the reason she wasn't

being recommended was because she had complained about how the apparel department was being run. (ROA.884, 1045).  Plaintiff did not state that she believed that race or age played a factor in her not being considered. (ROA.1045). Knowlton responded to Plaintiff and coordinated a date when both she and Nunez could meet with Plaintiff to address her concerns. (ROA.884, 1045).

On June 4, 2018, Plaintiff requested another open door with Stewart and Nunez regarding the same issue about the Trainee Position. (ROA.884, 1045). Stewart responded to Plaintiff and notified her that he and Nunez would coordinate a time to meet and discuss her concerns. (ROA.884, 1045).

In an effort to further evaluate Plaintiff's ongoing concern, Stewart followed up with the Assistant Managers again and asked them to submit a written summary of their experiences as Plaintiff's supervisors. (ROA.884, 1046).  Two managers who directly supervised Plaintiff provided written statements that included the following feedback on Plaintiff: (1) she had received complaints from Department Managers over three (3) areas; (2) associates have threated to quit or transfer because of Plaintiff; (3) she failed to take direction; (4) received complaints from associates in the Store; (5) Department Manager in Infants was terrified of her because she has an aggressive personality; (6) aggressive in how she speaks to associates; (7) combative; 6) works overtime without permission and ignores her

schedule; (8) problem with authority; and (9) associate was hospitalized due to stress caused by Plaintiff. (ROA.884-885, 969-971, 1045).

On June 6, 2018, before Stewart could even coordinate a meeting with Plaintiff to address her open door, she bypassed her open door with Stewart and Nunez and sent an email directly to Doug McMillion, President and CEO of Walmart. (ROA.885, 973-976, 1046). This email was treated as an "Executive Open Door." (ROA.885, 973-976, 1046). In the Executive Open Door, Plaintiff made general non-specific statements regarding "topics of discussion" that included, but were not limited to: (1) biased and discriminatory treatment of any human beings; (2) core values; (3) open door issues; (4) authority/leadership/management; (5) accountability status; (6) hiring freeze; and (7) loss of profits. (ROA.885, 973-976, 1046).

On June 10, 2018, Stewart once again emailed Plaintiff to arrange an Open Door meeting in response to her request. (ROA.885, 978, 1046). On June 11, 2018, Plaintiff's Executive Open Door Complaint was also scheduled for a review. (ROA.885, 980-985, 1046).

### (2) Investigation of Plaintiff's Complaints

On June 15, 2018, Region 5 Human Resource Director Joedi Graham ("Graham") was assigned to handle Plaintiff's Executive Open Door, and upon

assignment, she reached out to Plaintiff to determine her availability.  (ROA.885, 987, 1047).

Graham met with Plaintiff for three (3) hours on June 20, 2018 to discuss her concerns and then again on June 27, 2018.  (ROA.885, 989-994, 1047).  Graham determined that, after this lengthy conference, Plaintiff's allegations of racial bias could not be substantiated, especially considering Knowlton had recommended and hired another diverse black associate, Erica Hamilton, for the Trainee Position. (ROA.885, 989-994, 1047).

On July 6, 2018, Plaintiff filed a complaint through the Global Ethics Helpline regarding a dispute she had with an Assistant Manager named Niesha Manual, who she alleges accused her of lying.  (ROA.885-886, 996-1001, 1047). After investigating the complaint, it was closed as "unsubstantiated."  (ROA.886, 996-1001, 1047).

### D.    Plaintiff's Charge of Discrimination

Although Graham fully investigated Plaintiff's complaints, on July 6, 2018, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") alleging that she was discriminated and retaliated against due to race and age from May 9, 2018 to June 4, 2018, when she was denied the opportunity by Knowlton to interview for an assistant manager position. (ROA.886, 944-945). The EEOC determined that they could not substantiate her

allegations of discrimination and issued a Notice of Right to Sue. (ROA.886, 944-945).

Following the filing of her EEOC Complaint, Plaintiff continued to send emails to Knowlton and the Market complaining of operational matters, including scheduling, overtime, shift rotation, associate training, and her ongoing workplace disputes with other associate co-workers. (ROA.886, 1047).  Managers met with Plaintiff on numerous occasions from July through November 2018 to address her ongoing workplace concerns, which were all addressed, and her allegations determined to be unsubstantiated. (ROA.886, 1003-1005, 1047).

A Grass Roots Listening Session was held at the Store on October 3, 2018 at 3:00 p.m., in which all associates were invited to sign up and participate. (ROA.886, 1007-1011, 1047).   On October 15, 2018 Plaintiff made another complaint to the Global Ethics Helpline. (ROA.886, 1007-1011, 1047).  The matter was referred to Divisional Human Resource Manager Carlos Sanchez ("Sanchez") to handle as an open door.  *Id.*  The Ethics department further determined that Plaintiff had met with Nunez and Graham on multiple occasions and had previously spoken to Sanchez, and she continued to repeat her same allegations that were not substantiated. (ROA.886, 1007-1011, 1047).

On October 19, 2018, Nancy Roberson, the Senior Ethics Manager for US Ethics and Compliance, emailed Sanchez and notified him as follows:

> I wanted to send you the information I have on Rhonda McLemore. She continues to call into the Ethics Hotline to report the same or similar concerns which appear to have been already addressed or very vague allegations. I know the MHRM and RHRD have spoken with her on multiple occasions. I am referring over to you for review and any follow up that may be needed.

(ROA.886-887, 1013, 1048).

On November 21, 2018, in response to her Ethics Complaint, Plaintiff was interviewed again by Nunez and Knowlton in which her concerns were once again addressed and not substantiated. (ROA.887, 1048).

On November 29, 2018, Plaintiff had an incident with a male customer, allegedly named "Suday Kuchimanchi," regarding an attempted pick up of an on-line purchase at the Store that had been misplaced. (ROA.887, 1015-1016, 1048). Plaintiff has testified that she believes this customer was a "decoy" who was sent by Walmart to intentionally set up Plaintiff. (ROA.887, 939-940).

Plaintiff submitted a Global Ethics Complaint on December 7, 2018, notifying the Ethics Department that she: (1) believed that Walmart installed new Wi-Fi which causes distortion only to her radio (Plaintiff further testified in her deposition that she believed Walmart installed the new Wi-Fi just to track her voice); (2) feared that Walmart had "infiltrated my home and my cell phone;" (3) had spoken to Blackfish to investigate Walmart; and (4) believed that customers were trying to record her on behalf of Walmart. (ROA.887, 1018-1019, 1048).

### E.    Plaintiff's Termination

On December 29, 2018, Knowlton began an investigation regarding a concern brought to her by associates about the Support Managers in the Store. (ROA.887, 1021-1025, 1048).  Knowlton was interviewing associates in her office regarding the situation when Plaintiff heard of the investigation and verbally confronted Knowlton in her office.  (ROA.887, 1021-1025, 1048).  Josephine Jacobs ("Jacobs"), the Asset Protection Manager for the Store, was sitting in the office when Plaintiff confronted Knowlton. (ROA.887, 1021-1025, 1048). Plaintiff told Knowlton that no one respected her and that she was not wanted in the Store.  (ROA.887-888, 1021-1025, 1048).  Plaintiff further stated that she knows a lot of people in the community and that Knowlton should leave the store *"or else."* (ROA.888, 1021-1025, 1048).  Plaintiff left the Store and told another associate that she had to leave "before she says something or does something." (ROA. 888, 1021-1025, 1048).  Plaintiff then stated directly to Knowlton that Knowlton "made her sick." (ROA.888, 1021-1025, 1048).

As a result of Plaintiff's comments and actions, Knowlton feared for her safety; therefore, the Store Asset Protection office contacted the Frisco Police Department. (ROA.888, 1033-1035).  The certified police report shows that on December 29, 2018 at 3:46 p.m., the Frisco Police were notified that the Store Manager needed an escort to her vehicle because she had been threatened by

Plaintiff.  (ROA. 888, 1033-1035).  Knowlton was escorted to her car at 5:19 p.m. by the Frisco Police. (ROA.888, 1033-1035).

On December 29, 2108, Knowlton, Jacobs and Daniel Rios ("Rios") provided written statements attesting to the incident and confirming the threat made against Knowlton.  (ROA.888, 1021-1025, 1048).  On January 2, 2019, Cary Kiser ("Kiser"), Market Asset Protection Manager, conducted a threat assessment investigation per Walmart policy.  (ROA.888, 1048).

Plaintiff stated the following to another Walmart associate immediately after this incident about Knowlton: "she's scared, she should be scared… she should be very scared."  (ROA.888, 1027-1029, 1048).

On January 4, 2019, after Management consulted with the legal department, Plaintiff's employment was terminated for Gross Misconduct – Other.  (ROA.888, 1031, 1048).  It was determined that Plaintiff made a threat to Knowlton, a clear violation of the Violence-Free Workplace Policy. (ROA.888, 1031, 1048).

**F.    Facts Alleged by Plaintiff to support her claims**

**(1) Deprivation of Civil Rights and Conspiracy to Interfere**

Preposterously, Plaintiff testified that the Marshal's office, FBI, OSHA, Post Office/Carrier, Frisco Police Department, FedEx and the judicial system (Judge Nowak) conspired with Walmart and Stewart to get Plaintiff terminated and deprive her of her rights.  (ROA.888-889, 921-927).

> Q.    So it ---it's your testimony that those government agencies are working somehow with Walmart—
>
> A.    Yes.
>
> Q.    --to deprive you of something that you're entitled to?
>
> A.    Yes
>
> * * *
>
> Q.    And so it's your testimony that the marshal—these issues that occurred with the service of process of the complaints were that the U.S. Marshal's office was conspiring with Walmart to make that happen?
>
> A.    Yes.

(ROA.889, 922).

> * * *
>
> Q.    And it sounds like you're also accusing the postal office of being involved in the conspiracy.
>
> A.    Yes.

(ROA.889, 925).

Plaintiff further testified that she believes that, after she filed a complaint with OSHA, (1) the Director of OSHA, Mr. Acevedo hid mail under her front door mat so that she couldn't find it, (2) that Mr. Acevedo was conspiring with his investigator Ms. Nardizzi, the investigator, who prematurely closed her complaint, and (3) that OSHA intentionally delayed investigating to benefit Walmart. (ROA.889, 922, 925).   Shockingly, Plaintiff testified that the OSHA letter she alleges was placed under her door mat by Mr. Acevedo was tainted with a smell and she put it in a plastic bag until she could get it tested by the police. (ROA.889,

926).  Plaintiff went on to testify that she started suffering medical issues that she had never before experienced after receiving the letter from OSHA.  Plaintiff further testified:

> Q.  Is there anything else that you believe was suspicious that you believe Walmart conspired with one of these agencies to try to get your terminated?  Anything else you haven't talked about?  You talked about people following your and the phone and the mail.
>
> A.  I think that's pretty much it.  And this may be farfetched, but I took my – the envelope that OSHA sent and I put them outside in a plastic bag.  I don't know.  It's something about it that burns my nose.

(ROA.889-890, 926).

Plaintiff testified that she believes that there is a possible "connection" between Magistrate Nowak, Mr. Acevedo at OSHA and Walmart because there are individuals by the name of Nowak and Acevedo who work for Walmart. (ROA.890, 922).  Plaintiff further testified:

> Q.  So let's just go back to specifically OSHA's connection to Walmart.  What—what connection is there between Walmart and OSHA?
> A.  I believe because Jason was the senior asset protection manager that he does have a connection with the judicial system as well as OSHA as well as – and I'm not really sure, there was a – also a postal person involved in delivering mail that your mail didn't make it to me.  It was the same carrier…
> Q.  Okay.  So now you're talking about the post office?
> A.  All of it happened at the same time.

(ROA.890, 922-923).

Plaintiff further asserted that Walmart allegedly used an employee by the name of Sudha Kuchimanchi at Walmart to track her phone and computer, which caused her to have to cut all of the wires to her home computer and phone. (ROA.890, 923).  Plaintiff testified that after having a phone conversation with Carlos Sanchez, she was unable to locate the phone bill and believes her phone was placed on a different network.  (ROA.890, 923).

> Q.    Okay. You believe Walmart somehow did something to affect your phone?
> A.    Yes.
> Q.    Okay.  And what exactly do you think Walmart did to your phone?
> A.    I believe – and I'm not 100 percent sure, but I believe they are tracking my phone.  (Ex. A, p. 145).
> Q.    Ms. McLemore, I mean this seems really farfetched, you've got to know that that's how that sounds?
> A.    Okay.
> Q.    I mean, don't you see that?
> A.    If you're asking me to see that, no ma'am.
> Q.    So I mean, you – what you're telling me, you truly believe is a possibility that happened in this case?
> A,    Yes.

(ROA.890-891, 923).

Plaintiff testified this conspiracy was done for the purpose of trying to get her terminated.  (ROA.891, 924).

### (2) Race Discrimination under Title VII and Age Discrimination under ADEA

Plaintiff alleges that the basis for her race and age discrimination claim is that she was (1) given a low assessment, (2) denied interview during regional training in June 2018, and that after she was denied an interview there were no other incidents that form the basis of her claim of race and age discrimination. (ROA.891, 927-933).[3]

| | | |
|---|---|---|
| Q. | Okay.  So from the time – I guess it was May when that interview was supposed to happen; is that right? June? | |
| A. | June | |
| Q. | In June 2018? | |
| A. | Yes. | |
| Q. | Until the time you were terminated, did anything else happen, any specific event that makes up your claim for race discrimination? | |
| A. | No. | |
| Q. | And did anybody ever make any racial comments to your or derogatory comments about your race? | |
| A. | No. | |

(ROA.891, 931-932).

Plaintiff admitted that Knowlton completed an assessment with a rating that qualified her for the regional selection process. (ROA.891, 931).  It was the Assistant Manager's personal comments and observations about Plaintiff's

---

[3] However, in her Brief, Appellant now makes new allegations not previously raised in the District Court or properly supported by the record that relate to hostile work environment. (Appellant's Brief, Document: 00515827407, pp. 11-16).

leadership skills that kept her from being accepted for the Trainee position. (ROA.891, 969-971, 1045).

Plaintiff testified there were only three individuals who were participating in the regional selection process to be promoted to assistant manager and they were all three black and that Erica Hamilton, a black associate, was promoted to the Support Manager position. (ROA.891-892, 935-936).

### (3) Defamation claim against Knowlton and Jacobs

Plaintiff admitted in her deposition that there were only two statements made that form the basis for her claim of defamation against Knowlton and Jacobs: (1) Walmart conducted a "threat assessment" after Plaintiff's threat to Knowlton and during the threat assessment investigation, Kiser told Plaintiff that Jacobs and Knowlton had relayed to him the statement made by Plaintiff (the only other individual in the room was the Store Manager from Store No. 2926 who was asked to sit in on the assessment and take notes as a witness) and (2) the Frisco Police Department was notified of the threat Plaintiff made during their investigation and visit to the Store. (ROA.892, 933-934). Plaintiff further admits she doesn't even know who made the statement to the Frisco Police Department. (ROA.892, 933).

### (4) Retaliation under Title VII

Plaintiff claimed that after November 2018, when she received a right to sue from the EEOC, Walmart retaliated against her by taking associates away from

her, making her work by herself, not permitting her overtime, because associates were talking about her and by terminating her. (ROA.892, 934). The undisputed facts establish that work was not taken away from Plaintiff, and Plaintiff was treated the same as other associates in the Store regarding the amount of overtime that was being permitted. (ROA.892, 1047).[4]

## SUMMARY OF THE ARGUMENT

The District Court properly granted Appellees' Motion for Summary Judgment on Plaintiff's claim of Conspiracy Deprivation of Civil Rights as McLemore failed to demonstrate the requisite conspiracy proscribed by 42 U.S.C. § 1985 and, therefore, McLemore has not stated a viable claim against Appellees for conspiracy deprivation of civil rights under § 1985.

The District Court properly granted Appellees' Motion for Summary Judgment dismissing Plaintiff's claims against Defendants Jacobs, Knowlton Nunez and Stewart under Title VII and against Knowlton and Stewart under the ADEA. Defendants Jacobs, Knowlton, Nunez and Stewart cannot be individually liable for discrimination or retaliation under Title VII, and Knowlton and Stewart cannot be individually liable pursuant to the ADEA.

---

[4] However, in her Brief, Appellant also makes new claims not previously raised in the District Court or properly supported by the record regarding retaliation. (Appellant's Brief, Document: 00515827407, pp. 19-20, 27-28).

The District Court properly granted Appellees' Motion for Summary Judgment on Plaintiff's claims against Defendant Walmart under Title VII as Plaintiff cannot establish a *prima facie* case of race discrimination, hostile work environment or retaliation.

The District Court properly granted Appellees' Motion for Summary Judgment dismissing Plaintiff's ADEA claims against Walmart.

The District Court properly granted Appellees' Motion for Summary Judgment dismissing Plaintiff's claims against Defendant's Knowlton and Jacobs for defamation.

The District Court correctly denied Plaintiff's motions for leave to amend her complaint.

The District Court properly denied Plaintiff's Amended Motion for Summary Judgment.

## STANDARD OF REVIEW

When a trial court grants summary judgment, the appellate court reviews that decision using the *de novo* standard of review, applying the same substantive test set forth in Rule 56 of the Federal Rules of Civil Procedure. *See Blow v. City of San Antonio*, 236 F.3d 293, 296 (5th Cir. 2001) (citing *Horton v. City of Houston*, 179 F.3d 188, 191 (5th Cir. 1999)).

Rule 56(c) of the Federal Rules of Civil Procedure "mandates the entry of summary judgment against a party who fails to make a showing sufficient to establish the existence of every element essential to that party's case on which that party will bear the burden of proof at trial." *Ward v. Bechtel Corp.*, 102 F.3d 199, 202 (5th Cir. 1997); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, (1986). Once the movant files a properly supported motion, the non-moving party may survive summary judgment only by presenting competent evidence of "specific facts showing that there is a genuine issue for trial." *Celotex Corp.*, 477 U.S. at 323-24. To defeat a defendant's summary judgment motion, therefore, a plaintiff must offer more than conclusory allegations, subjective beliefs, or speculation that a prohibited factor was the reason for an adverse employment action. *Topalian v. Ehrmann*, 954 F.2d 1125, 1131 (5th Cir. 1991) ("conclusory allegations are…insufficient to defeat… a motion for summary judgment"). The non-movant must specify evidence in the record and articulate the precise manner in which that evidence supports her claim. *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994), *cert. denied*, 513 U.S. 871, 115 S.Ct. 195 (1994). The non-movant may not merely rest on conclusory allegations, denials or unsubstantiated assertions. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 256 (1986); *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994) (*en banc*); *Simmons v. Lyons*, 746 F.2d 265, 269 (5th Cir. 1984). Furthermore, a mere scintilla of evidence in support of the non-

movant's position will not suffice. *Anderson*, 477 U.S. at 252. A summary judgment motion should be granted unless the non-movant produces concrete evidence from which a reasonable juror can return a verdict in [her] favor. *Anderson*, 477 U.S. at 256; *Consolidated Metal Products, Inc. v. American Petroleum Institute*, 846 F.2d 284, 288-89 (5th Cir. 1988). Rule 56 must be construed with due regard not only for the rights of persons asserting meritorious claims, but also for the defendant's countervailing right not to endure jury trials on claims without factual basis. *Celotex*, 477 U.S. at 327. Thus, if the factual context of the case reveals that the non-movant's claims are tenuous, his or her burden increases, and even more persuasive evidence must be introduced to avoid summary judgment. *Matsushita Electrical Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). When the non-movant fails to make a showing sufficient to establish the existence of an element essential to her case and on which she will bear the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322-23.

Moreover, as recognized by the Court, "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition[5] to summary judgment" (quoting *Forsyth v. Barr,* 19 F.3d at

---

[5] In this case, Plaintiff's Response to Defendants' Motion for Summary Judgment does not address the substance of Defendants' summary judgment arguments (ROA.1621-1633), but (footnote continued…)

1537). The Court need only consider the record materials actually cited by the parties. Fed. R. Civ. P. 56(c)(3). (ROA.3124-25).

## ARGUMENT AND AUTHORITIES

### A.     The District Court properly held that McLemore failed to demonstrate a conspiracy under 42 U.S.C. § 1985

Plaintiff asserted a claim against all Defendants for Conspiracy Deprivation/Conspiracy to Interfere with Civil Rights pursuant to 42 U.S. Code §1985(2)(3).  Title 42 U.S.C. §1985 creates a private civil remedy for prohibited forms of conspiracy to interfere with civil rights under that section.  Section 1985(2) prohibits conspiracies to deter witnesses from attending court or testifying, punish witnesses who have so attended or testified, or injure jurors. *See* 42 U.S.C. §1985(2).  The Fifth Circuit has held that, for there to be a cognizable injury, the conspirator must threaten or injure the witness "on account of his having so attended or testified" — that is, because of, and by reason of, a person's participation as a witness. *Kinney v. Weaver*, 367 F.3d 337, 355 (5th Cir. 2004).

---

rather argues that it is premature because Plaintiff requires "additional time for investigation and research into Defendants' Walmart discriminatory practices nationwide" and because the "discovery process in this matter not even begun in this matter," alleging incorrectly that Defendants had refused to answer written discovery or produce documents. (ROA.1625-1627). Plaintiff specifically claimed an intent to send out sworn affidavits to all recently discharged Walmart associates, claiming she believed such investigation would lead to additional genuine issues of materials fact (ROA.1626). The Court, noting that the only specific discovery Plaintiff advises she intends to pursue includes statements from all recently discharged Walmart employees nationwide and that the discovery deadline had long expired, found that Plaintiff had not met her burden for a Rule 56(d) continuance (which the Court deemed Plaintiff's request) and correctly denied Plaintiff's request to reopen discovery and delay consideration of the pending motions for summary judgment (ROA. 3125-3128).

The Fifth Circuit has applied this same logic to limit liability for adverse actions taken against witnesses who have not yet testified in the proceedings. *Kinney v. Weaver*, 367 F.3d 337, 355 (5th Cir. 2004).   In such a case, the conspirator must injure the party or witness in order to deter him from attending or testifying in federal court. *Kinney v. Weaver*, 367 F.3d 337, 355 (5th Cir. 2004).   Plaintiff made no allegation that Walmart or any of the other purported co-conspirators in any respect deterred her attendance or testimony in a court proceeding. (ROA.459-475, 3129-3132)

Plaintiff further failed to demonstrate that the purported "conspiracy" proscribed by §1985(2) exists. (ROA.459-475)  The long-standing rule in the Fifth Circuit for purposes of §1985 is that a "corporation cannot conspire with itself any more than a private individual can, and it is the general rule that the acts of the agent are the acts of the corporation." *Hilliard v. Ferguson,* 30 F.3d 649, 652–53 (5th Cir. 1994).  Employees of a corporation are all members or agents of the same collective entity; therefore, such as in this case, the alleged conspiracy cannot involve two or more people. *Hilliard,* 30 F.3d 649, 652–53 (5th Cir. 1994). (ROA.3129-3132).

Section §1985(3) "prohibits conspiracies to 'deprive . . . any person or class of persons the equal protection of the laws' and those aimed at preventing a person from lawfully voting*." Montoya v. FedEx Ground Package Sys., Inc*., 614 F.3d

43

145, 149 (5th Cir. 2010) (citing 42 U.S.C. §1985(3)).  To state a claim under §1985(3), Plaintiff must allege: (1) a conspiracy *of two or more persons*; (2) for the purpose of depriving, directly or indirectly, a person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) which causes injury to a person or property, or deprives her of a right or privilege of a United States citizen. See *Hilliard v. Ferguson*, 30 F.3d 649, 652–53 (5th Cir. 1994); *Deubert v. Gulf Fed. Sav. Bank*, 820 F.2d 754, 757 (5th Cir. 1987). Additionally, the conspiracy must also have a racially based animus." Id. At 653; *See also Horiast v. Doctor's Hosp. Of Opelousas*, 255 F.3d 261, 271 (5th Cir. 2001).  Moreover, Plaintiff alleged none of the elements of a conspiracy as required under § 1985(3) and, in particular, alleged no facts demonstrating the existence of any alleged conspiracy whose purpose was to deprive her of equal protection of the laws based on racial animus or any other protected characteristic. Plaintiff makes only a conclusory allegation that supervisors of Walmart intimidated and threatened her (and "had help from government authorities" and "decoys"). (ROA.464).

As the Court stated, Plaintiff's "Conspiracy Deprivation of Civil Rights" allegations fail to state any racial animus, and Plaintiff also fails to address any of the remaining elements required under § 1985(3), finding that Plaintiff failed to demonstrate the requisite conspiracy under § 1985(3). (ROA.3129-3132).

Plaintiff further referenced an alleged conspiracy under 18 U.S.C. §371, which is wholly misplaced. 18 U.S.C. §371 makes it a federal criminal offense to conspire against or conspire to defraud the United States. To prove a conspiracy under 18 U.S.C. § 371, the government must show "(1) an agreement between two or more persons to pursue an unlawful objective; (2) the defendant's knowledge of the unlawful objective and voluntary agreement to join the conspiracy; and (3) an overt act by one or more of the members of the conspiracy in furtherance of the objective of the conspiracy." *United States v. Coleman*, 609 F.3d 699, 704 (5th Cir. 2010). As Plaintiff's claims are civil and not criminal and do not involve any allegations of conspiring against the government, the Court correctly held that, to the extent Plaintiff intended to assert claims under 18 U.S.C § 371, such claims fail and should be dismissed. (ROA.3129).

As demonstrated above, Plaintiff has not stated a viable claim against the Defendants for conspiracy under §1985 or 18 U.S.C. §371, and the District Court properly dismissed these claims. (ROA.3129-3132, 3187-3190)

**B.    The District Court properly held that Plaintiff's claims against Defendants Jacobs, Knowlton, Nunez and Stewart under Title VII and against Knowlton and Stewart under the ADEA should be dismissed**

Defendants Jacobs, Knowlton, Nunez and Stewart cannot be liable for discrimination or retaliation under Title VII, and Knowlton and Stewart cannot be liable pursuant to the ADEA. Texas federal courts and the Fifth Circuit have

uniformly denied recovery against individual supervisors and employees under Title VII. *See Grant v. Lone Star Co.*, 21 F.3d 649, 652 (5th Cir. 1994) (Title VII does not impose individual liability on employees); *Jones v. Dallas County*, 2013 U.S. Dist. LEXIS 172387, at *15-16 (N.D. Tex. Dec. 6, 2013) (Title VII does not impose individual liability on employees); and *Gallentine v. Hous. Auth. Of City of Port Arthur, Tex.*, 919 F.Supp.2d 787, 796 (E.D. Tex. 2013) ("It is well settled in the Fifth Circuit that individual employees, even those functioning in a supervisory capacity, cannot be held personally liable under Title VII, because they are not 'employers,' as that term is defined in Title VII").

Accordingly, the Court, citing *Jones* and *Gallentine, supra,* properly held found that Plaintiff's Title VII claims against Defendants Jacobs, Knowlton, Nunez and Stewart should be dismissed. (ROA.3132-3133, 3187-3190).

Further, individual supervisors may not be held liable under the ADEA; only an "employer" as defined under the ADEA may be liable. *Stults v. Conoco, Inc.*, 76 F. 3d 651, 655 (5th Cir. 1996); *Fierro v. Knight Transp.,* 2012 U.S. Dist. LEXIS 133249, at *17-23 (W.D. Tex. Sept. 18, 2012). In *Stults,* the Fifth Circuit specifically held that "the ADEA provides no basis for individual liability for supervisory employees." *Stults*, 76 F. 3d at 655. Based on the well-settled law, Defendants Jacobs, Knowlton, Nunez and Stewart cannot be found liable under Title VII, and Knowlton and Stewart cannot be held liable pursuant to the ADEA

in their capacity as individual managers employed by Walmart.

As the Court held, Defendants Knowlton and Stewart are each identified as supervisory employees in Plaintiff's live pleading (ROA.459-475), and Plaintiff does not allege that Knowlton and Stewart otherwise qualify as "employers" under the ADEA. Accordingly, as the Court correctly found, Plaintiff's claims under the ADEA against the individual Defendants fail as a matter of law and should be dismissed. (ROA.3148-3149, 3187-3189).

**C.    The District Court properly held that Defendants are entitled to summary judgment as a matter of law on Plaintiff's race discrimination claims under Title VII**

Plaintiff has alleged race discrimination under Title VII.  A Title VII claim may be established either through direct or circumstantial evidence.  *Laxton v. Gap, Inc.,* 333 F.3d 572, 578 (5th Cir. 2003).  Absent direct evidence of discrimination, a plaintiff must rely upon the familiar *McDonnell Douglas* burden shifting framework.  *McDonnell Douglas Corp. V. Green,* 411 U.S. 792 (1973).  In the present case, Plaintiff presented no direct evidence of a decision maker with racial animus that evinces discrimination under Title VII; thus, the burden shifting framework set forth below applies. *Brooks v. Firestone Polymers, LLC*, 70 F. Supp. 3d 816, 832 (E.D. Tex. 2014); s*ee also Dunn v. Hunting Energy Services*, 288 F.Supp.3d. 749, 769 (S.D. Tex. 2017).

Under the burden shifting framework, a plaintiff cannot survive summary

judgment unless she can demonstrate a *prima facie* case of discrimination. *Manaway v. Med. Ctr. Of Southeast Tex.*, No. 1:09-CV-356, 2011 U.S. Dist. LEXIS 92, at *22-24 (E.D. Tex. Jan. 3, 2011) (citing *Burrell v. Dr. Pepper/Seven Up Bottling Group, Inc.*, 482 F.3d 408, 411-12 (5th Cir. 2007); s*ee also Brooks,* 70 F. Supp. 3d 816, 832 (E.D. Tex. 2014).  If the plaintiff establishes a *prima facie* case of discrimination, the burden then shifts to the defendant to articulate a legitimate, non-discriminatory reason for its employment decision.  *Id*.  If the defendant meets its burden of production, the plaintiff must then offer sufficient evidence to create a genuine issue of material fact that either: (1) the defendant's reason is a pretext ("pretext analysis"); or, (2) that the defendant's reason, while true, is only one of the reasons for its conduct, and another "motivating factor" is the plaintiff's protected characteristic ("mixed-motive analysis").  *Id*.  A Title VII plaintiff at all times bears the ultimate burden of persuasion. *Id.*  Walmart is entitled to summary judgment under both the pretext analysis and the mixed-motive analysis. (ROA.3133-3139, 3187-3190).

**(1) Plaintiff has not established a *prima facie* case of race discrimination under Title VII**

To establish a *prima facie* case of race discrimination a plaintiff must prove each of the following elements:

> (1)   she belongs to a protected class;
> (2)   she was qualified for the position;
> (3)   she suffered an adverse employment action; and

(4)     others similarly situated were treated more favorably

*Brooks,* 70 F. Supp. 3d 816, 835 (E.D. Tex. 2014).

Turning to the present case, Plaintiff cannot establish the second and fourth elements of her *prima facie* case.

### a. Plaintiff Cannot Establish that Others Similarly Situated Were Treated More Favorably

Plaintiff testified that the sole basis for her race and age discrimination claim is that she was (1) given a low assessment and (2) denied an interview during regional training in June 2018.  Plaintiff further pleaded that she was terminated after she was denied the interview. (ROA.927-933).   To survive summary judgment, Plaintiff must prove that (1) she was qualified for the position and (2) that non-African American managers who were similarly situated were treated more favorably.  *Brooks,* 70 F. Supp. 3d 816, 835 (E.D. Tex. 2014).  With regard to the second element, the undisputed evidence clearly establishes that Plaintiff was not qualified for the Trainee position. With regard to the fourth element, Plaintiff must show that employees outside her protected class "were treated differently under circumstances 'nearly identical' to [hers]." *Brooks,* 70 F. Supp. 3d 816, 835 (E.D. Tex. 2014); *Greene v. Potter*, 240 Fed. Appx. 657, 660 (5th Cir. 2007) (quoting *Mayberry v. Vought Aircraft Co.,* 55 F.3d 1086, 1090 (5th Cir. 1995). *Wallace v. Methodist Hosp. Sys*., 271 F.3d 212, 221 (5th Cir. 2001); *see also Bryant v. Compass Group USA Inc.,* 413 F.3d 471, 478 (5th Cir. 2005) ("[t]o

establish disparate treatment, [the plaintiff] must show that [the employer] gave preferential treatment to another employee under 'nearly identical' circumstances." (citations omitted)). In order for the circumstances to be nearly identical, the misconduct itself must be nearly identical." *Bouie v. Equistar Chems. LP,* 188 Fed. Appx. 233, 237 (5th Cir. 2006) (citing *Perez v. Tex. Dep't of Criminal Justice*, 395 F.3d 206, 213 (5th Cir. 2004)). Importantly, "employees with different responsibilities, different supervisors, different capabilities, different work rule violations, or different disciplinary records are not considered to be 'nearly identical.'" *Dotson v. Gulf*, 2006 U.S. Dist. LEXIS 1893, at *7 (S.D. Tex. Jan. 9, 2006). This means that employees are not "nearly identical" if they have engaged in different violations of company policy. *See Davin v. Delta Air Lines, Inc*., 678 F.2d 567, 570 (5th Cir. 1982).

Therefore, to survive summary judgment, Plaintiff must have presented evidence of: (1) a non-African American Support Manager who was considered for interview for the Trainee Position under nearly identical circumstances, which included poor recommendations and work history, and (2) a non-African American Support Manager who threatened a manager with violence but was not terminated. Plaintiff has not met this stringent standard. First, the undisputed evidence establishes that an African American Support Manager by the name of Erica Hamilton from Store No. 5866 was selected to be hired for the Trainee Position.

(ROA.935-936, 1045).    Further, Plaintiff has no evidence of any manager who threatened violence against the Store Manager and retained their position.  Plaintiff is unable to demonstrate that any other Department Manager, actually engaged in similar infractions as Plaintiff and was, therefore, identical.   As such, Walmart is entitled to summary judgment because Plaintiff cannot establish the fourth element of her *prima facie* case.

Indeed, as the Court held, failing to provide summary judgment evidence on the fourth element alone is enough to end the analysis. (ROA.3136-3137). The Court further held that, even had Plaintiff provided a comparator – which she has not – Walmart has established a legitimate, nondiscriminatory reason for termination of Plaintiff, further buttressed by the fact that Walmart conducted multiple internal investigations regarding its alleged discriminatory animus. (ROA.3137-3138).

### (2) Walmart has articulated a legitimate non-discriminatory reason for the employment actions taken against Plaintiff

Even if Plaintiff could meet her *prima facie* burden, Walmart would still be entitled to summary judgment because Plaintiff was not permitted to participate in the Trainee Position interviews and was terminated for legitimate, non-discriminatory reasons.  As the Court held, it is undisputed, and the documents created contemporaneously with the investigation establish, that Plaintiff's

supervisors in good faith believed that Plaintiff was not qualified for the Trainee Position and Plaintiff was guilty of conduct justifying her discharge. (ROA.3137).

### (3) Walmart's legitimate, non-discriminatory reason for the employment actions taken against Plaintiff was not pretext, and her age and race were not motivating factors in the employment actions

Plaintiff has not presented any competent summary judgment evidence that Walmart's legitimate, non-discriminatory reason for her termination is pretext. Furthermore, Plaintiff has not presented any competent summary judgment evidence that Walmart's reason for termination, while true, is only one of the reasons for its conduct, and another motivating factor is Plaintiff's race. The undisputed evidence is that Plaintiff was terminated for Gross Misconduct. Plaintiff has not pointed to any competent summary judgment evidence to establish a question as to the veracity of Walmart's stated reason for not permitting her to participate in the Trainee Position interviews or for her termination. Any such claim would be based on nothing more than Plaintiff's own subjective belief, which is insufficient to overcome Walmart's legitimate, non-discriminatory reason for actions taken during her employment. *See Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996) (an employee's subjective belief that she suffered an adverse action as a result of discrimination, without more, does not create a fact issue in light of evidence establishing a legitimate nondiscriminatory reason for the adverse action); *see also Waggoner v. City of Garland*, 987 F.2d

1160, 1164 (5th Cir. 1993) (reasoning that subjective opinions, without supporting evidence, are insufficient to establish pretext).

As the Court acknowledged, Plaintiff's pleadings offer only her subjective belief that Walmart's proffered reasons for an adverse action are pretextual, which is wholly insufficient. (citations omitted). (ROA.3138).[6] As such, Plaintiff has not carried her burden of showing a factual dispute under a pretext or mixed-motive analysis, and the Court correctly held that Plaintiff's race discrimination claim against Walmart should be dismissed. (ROA.3133-3139, 3187-3190).

**D.    The District Court properly held that Walmart is entitled to summary judgment as a matter of law on Plaintiff's hostile work environment claim under Title VII**

**(1) Plaintiff has not established a *Prima Facie* Case of Hostile Work Environment**

To establish a race-based hostile work environment claim based on a supervisor's conduct, a plaintiff must prove (1) she belongs to a protected group; (2) she was subjected to unwelcome harassment; (3) the harassment was based on her membership in the protected group; (4) the harassment affected a term, condition, or privilege of employment. *EEOC v. Boh Bros. Cost. Co., LLC,* 731 F.3d 444, 453 (5th Cir. 2013).   For hostile work environment allegations against a co-worker or subordinate, Plaintiff would also have to prove element five (5) that

---

[6] Nor does Appellant's Brief cite to any support in the record that Walmart's legitimate, non-discriminatory reason for her termination was pretext or another motivating factor in her termination. (Appellant's Brief, Document: 00515827407).

the employer knew or should have known of the harassment and failed to take prompt remedial action. *Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir. 2002); *see also Brooks,* 70 F. Supp. 3d 816, 858 (E.D. Tex. 2014) and *Dunn*, 288 F. Supp. at 777.    Turning to the present case, Plaintiff cannot establish the second, third, fourth and fifth elements of her *prima facie* case.[7]

### (2) Plaintiff was not subjected to unwelcome harassment based on her race

Plaintiff has pleaded hostile work environment but has failed to present any evidence to support such a claim. When Plaintiff was asked what made up her claim for race discrimination (which includes her allegations of hostile work environment), she alleged that she was (1) given a low assessment and (2) denied an interview during regional training in June 2018. (ROA.927-933).    Plaintiff testified that at no time did any of her co-workers or managers make racially derogatory comments.    Further, a review of the matters raised by Plaintiff in her duplicative complaints clearly establishes that her hostile work environment claim will fail as a matter of law, as the conduct of which Plaintiff complained was (1) not severe or pervasive and did not affect a term, condition, or privilege of employment and (2) to the extent the complaints were about non-supervisory co-

---

[7] Plaintiff's allegations of harassment are based primarily on allegations against Plaintiff's co-workers and subordinates.  Therefore, Plaintiff was required to establish the fifth element of her *prima facie* case and prove that Walmart failed to take immediate and appropriate corrective action.

workers, Walmart took prompt action to address any situation raised by Plaintiff. While Plaintiff initiated numerous Global Ethics Complaints throughout her employment, what is compelling in this matter, is that although Plaintiff's first complaint alleged that she had not properly been considered to participate in the Trainee Position selection, that allegation was unsubstantiated after a lengthy investigation, and each and every one of the remaining Ethics complaints was simply duplicative of her first complaint or a work-related dispute not based on any alleged discriminatory acts.

Plaintiff has failed to establish the second and third elements of her *prima facie* case of discrimination under a hostile work environment theory. As the Court determined, Plaintiff proffered no evidence that she was subjected to unwelcome harassment or that any such harassment was based on Plaintiff's race, ruling that Plaintiff's conclusory, personal beliefs that Walmart's actions in giving her a low assessment and denying her an interview were motivated by Plaintiff's race or that her termination was, are insufficient to demonstrate harassment based on her protected status. (ROA.3140).

### (3) Plaintiff has not established that a term, condition or privilege of employment was affected by the alleged harassment

For harassment to affect a term, condition or privilege of employment, it must be "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Hernandez v. Yellow*

*Transp., Inc.* 670 F.3d 644, 651 (5th Cir. 2012). Therefore, to survive summary judgment on a hostile work environment claim based on race, the Plaintiff must create a fact issue as to each of the following elements (1) racially discriminatory intimidation, ridicule and insults that are: (2) sufficiently severe or pervasive that they: (3) affect the conditions of employment; and (4) create an abusive working environment. *Brooks,* 70 F. Supp. 3d 816, 858 (E.D. Tex. 2014). To determine whether an abusive working environment exists, a court must assess the totality of the circumstances, including (1) the frequency of the discriminatory conduct; (2) its severity; (3) whether it is physically threatening or humiliating (or whether it is a mere offensive utterance); (4) and whether it unreasonably interferes with the employee's work performance. *Dunn*, 288 F. Supp. At 77. Simple teasing, rude or offensive comments, or isolated incidents will not amount to actionable discrimination. *Brooks,* 70 F. Supp. 3d 816, 858 (E.D. Tex. 2014); *Dunn*, 288 F. Supp. At 769. Conduct that only "sporadically wounds or offends but does not hinder an employee's performance is not actionable." *Brooks,* 70 F. Supp. 3d 816, 857 (E.D. Tex. 2014). The mere utterance of an ethnic or racial epithet that engenders offensive feelings in an employee would not alter the terms and conditions of an employee's work environment. *Id.* Plaintiff testified that no racially derogatory comments were ever made by Walmart co-workers or managers.

The actions alleged by Plaintiff that occurred throughout her employment are not severe or pervasive enough to create a hostile work environment and did not create an abusive work environment that unreasonably interfered with Plaintiff's work performance. Instead, the record is replete with evidence that Plaintiff herself was the instigator of any discord within the work environment and that the events alleged by Plaintiff were nothing more than workplace disputes that were not racially motivated. It is clear that the conduct of which Plaintiff complained did not impact a term, condition, or privilege of employment as is required for a hostile work environment claim and are not evidence of race, color or national origin discrimination. "Title VII . . . is not a 'general civility code,' and 'simple teasing,' offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.' " *Lauderdale v. Tex. Dep't of Criminal Justice*, 512 F.3d 157, 163 (5th Cir. 2007) (*quoting Faragher v. City of Boca Raton*, 524 U.S. 775, 788, 118 S. Ct. 2275, 141 L. Ed. 2d 662 (1998)). The specific conflicts alleged by Plaintiff are not sufficient to create a hostile work environment claim as they amount to no more than employment disputes and do not involve physically threatening or humiliating conduct. *See Young Buisson v. Bd. Of Supervisors of La. Cmty. & Tech. College Sys.*, 2014 U.S. App. LEXIS 21356, at *19 (5th Cir. 2014).

As the Court concluded, Plaintiff does not point to competent summary judgment evidence indicating the alleged harassing conduct affected a term, condition or privilege of employment, and found that there is no indication a reasonable person would find Plaintiff's work environment to be hostile. (ROA.3140-314). Accordingly, Plaintiff failed to establish the fourth element of her *prima facie* case of discrimination under a hostile work environment theory.

### (4) **Walmart was made aware of Plaintiff's allegations of harassment and took prompt remedial action**

Plaintiff failed to establish the fifth element of her *prima facie* case of discrimination under a hostile work environment theory. A Defendant may avoid liability when harassment occurs if the defendant took prompt remedial action to protect the employee. *Williams-Boldware v. Denton Cty.*, 741 F.3d 635, 640 (5th Cir. 2014). *Id.* It is undisputed that Walmart provides extensive training and avenues for Plaintiff to make complaints of discrimination and Plaintiff availed herself of these avenues, which included reporting to Global Ethics, and each level of Human Resources through Regional. There is no evidence that the events alleged by Plaintiff were anything more than workplace disputes that were not racially motivated. Further, the evidence clearly establishes that Walmart took prompt remedial action to remedy the issues.

As the Court found, even if the Court were to assume Plaintiff has provided "concrete examples of how the racial intimidation interfere[d] with [her] work

performance," Plaintiff still fails to demonstrate her employer not only knew about these instances of harassment but also notably "failed to take prompt remedial action." (citations omitted) (ROA.3141). The Court further found that the record is replete with evidence that Walmart conducted multiple investigations into Plaintiff's allegations. (citations omitted) (ROA.3141).

Accordingly, the Court correctly held that Plaintiff's hostile work environment claim against Walmart should be dismissed. (ROA.3139-3141, 3187-3190). In so doing, the Court pointed out "lest it be overlooked, the summary judgment record reflects that it was Plaintiff who threatened and intimidated her fellow Walmart employees, not the other way around." (ROA. 3141).

**E.    The District Court properly held that Defendants are entitled to summary judgment as a matter of law on plaintiff's Retaliation Claim under Title VII**

**(1) Plaintiff has not established a Prima Facie Case of Retaliation**

To establish a *prima facie* claim of retaliation under Title VII, a plaintiff must prove each of the following elements: (1) she engaged in a protected activity; (2) she suffered an adverse employment action; and (3) a causal link existed between the protected activity and the adverse action. *Baker v. Am. Airlines, Inc.*, 430 F.3d 750, 754 (5th Cir. 2005); *Washburn v. Harvey,* 504 F.3d 505, 510 (5th Cir. 2007); *Schimek v. MCI, Inc.,* 2006 WL 2252034 (N.D. Tex. Aug. 7, 2006).

If a plaintiff successfully establishes the elements of a *prima facie* case*,* the burden of production then shifts to the defendant to articulate a legitimate, non-discriminatory reason for the alleged discriminatory action taken. *Id.* If the defendant satisfies this burden, then the plaintiff must offer sufficient evidence that the proffered reason is a pretext for discrimination. *Gee v. Principi,* 289 F.3d 342, 345 (5th Cir. 2002). Under this framework, the employee's ultimate burden is to prove that the adverse employment action taken against the employee would not have occurred "but for" the protected conduct, and even if a plaintiff's protected conduct is a substantial element in a defendant's decision to terminate [coach] an employee, no liability for unlawful retaliation arises if the employee would have been terminated [coached] even in the absence of the protected conduct. *See Dunn*, 288 F. Supp. At 787. To survive summary judgment, Plaintiff must establish a causal link between her engaging in a protected activity and her termination. Plaintiff alleges that she was coached and terminated in retaliation for making complaints of discrimination. Turning to the present case, Plaintiff has not established the first, second or third elements of her *prima facie* case.

a. Plaintiff's Complaints Were Not Protected Conduct

Whether an employee can be found to have opposed an unlawful practice by engaging in a protected conduct, the employee must hold a "reasonable belief" that the conduct he opposed actually violates Title VII or §1981. *Long v. Eastfield*

*Coll.,* 88 F.3d 300, 305 (5th Cir. 1996).  The Plaintiff's opposition to alleged discrimination must be based on a reasonable, good faith belief that discrimination occurred and the employee acts in a reasonable manner to oppose it.  In this case, Plaintiff's accusations of discrimination did not constitute protected opposition conduct because the allegations were unfounded, and there was not a good faith belief by Plaintiff that her allegations were in opposition to actual discrimination.

Opposition protection is unavailable for an employee who makes unfounded claims of discrimination in order to excuse non-compliance with basic job duties. Where a Plaintiff fails to submit evidence supporting the complaints made as alleged protected conduct, any belief that she was involved in protected conduct is objectively unreasonable, even if it was ultimately investigated by the Company. *See Byers v. Dallas Morning News, Inc.*, 209 F.3d 419, 428 (5th Cir. 2000); *Smith v. Int'l Paper Co*, 523 F.3d 845, 849-50 (8th Cir. 2008) (finding that no reasonable person could believe that a supervisor "hollering and cussing" at him was protected under Title VII); *Clover v. Total Sys. Servs.*, *Inc.*, 176 F.3d 1346, 1351-52 (11th Cir. 1999) (fact that opposed conduct led to an in-house investigation does not alter the conclusion that plaintiff's belief was not objectively reasonable). The evidence clearly establishes that Plaintiff was attempting to insulate herself from discipline by abusing the procedures for legitimate complaints and couching simple petty

workplace disputes as alleged complaints of "discrimination." *See Carrington v. Des Moines,* 481 F.3d 1046, 1051 (8th Cir. 2007).

Therefore, even though Plaintiff made numerous complaints while employed by Walmart, they were not good faith complaints of discrimination and consequently not protected.

    b. <u>Plaintiff cannot establish that there is a causal link between any protected activity and an adverse employment action</u>

Plaintiff claims that after November 2018, when she received a right to sue from the EEOC, Walmart retaliated against her by taking associates away from her, making her work by herself, not permitting her overtime, because associates were talking about her and by terminating her. (ROA.934). First, the undisputed facts establish that work was not taken away from Plaintiff, and Plaintiff was treated the same as other associates in the Store regarding the amount of overtime that was being permitted. (ROA.1047-1048). Further, Plaintiff's reliance that she was terminated in retaliation for filing her Charge fails because disciplinary actions are not adverse employment actions where colorable grounds exist for the disciplinary action. *Jackson v. Honeywell Int'l Inc.*, 601 Fed. Appx. 280, 2015 U.S. App., LEXIS 2258, 126 Fair Empl. Prac. Cas. (BNA) 525, 25 WL 585882 (5th Cir. 2015). In this case, the undisputed evidence establishes that Plaintiff's violent conduct was in direct violation of Walmart policy, and there were colorable grounds for Plaintiff's termination. Significantly, Plaintiff was not terminated until

approximately seven (7) months after she filed a Charge with the EEOC alleging she was denied the opportunity to interview for the Trainee position. The complaints made by Plaintiff in the intervening seven (7) months were duplicative of her first complaint and/or based on her belief that there were operational issues at the Store and not made in a good faith effort to oppose discrimination. The Fifth Circuit in *Strong v. University Healthcare System, LLC*, addressed this specific issue and rejected the notion that temporal proximity standing alone could be sufficient proof of but for causation. 482 F.3d 802 (5th Cir. 2007). The Court went on to hold that "employers are sometimes forced to remove employees who are performing poorly, engaging in improper work conduct, or severely disrupting the workplace." *Id.* At 808.

Therefore, as to Plaintiff's termination, there is no causal connection because of the time gap between her alleged protected activity and her termination and the fact that Plaintiff was terminated pursuant to Walmart policy. *See McCoy v. City of Shreveport,* 492 F.3d 551, 556 (5th Cir. 2007); *Kipp v. Mo. Highway & Transp. Comm'n,* 280 F.3d 893, 897 (8th Cir. 2002) (The interval of two months between the complaint and the termination dilutes any inference of causation). There is no causal connection between the complaints made by Plaintiff and her termination for blatantly threatening a Store Manager with a violent act in violation of Walmart Policy. Therefore, Plaintiff has not established the causal nexus

between her protected activity and and/or termination and, therefore, cannot establish the third element of her *prima facie* case of retaliation.

**(2)** **Walmart has articulated a legitimate non-discriminatory reason for the employment actions taken against Plaintiff, and Walmart's legitimate, non-discriminatory reason for Plaintiff's employment actions was not pretext**

Even if Plaintiff could establish her *prima facie* case, which she cannot, Plaintiff's claim would ultimately fail, and Walmart is entitled to summary judgment because the competent summary judgment evidence establishes that Plaintiff was terminated for a legitimate, non-discriminatory and non-retaliatory reason. Moreover, Plaintiff cannot point to any competent summary judgment evidence to establish a question as to the veracity of Walmart's stated reason for her not being permitted to interview for the Trainee position and her termination. Because Plaintiff has not presented any competent summary judgment evidence that Walmart's legitimate and non-discriminatory reason for her termination is a pretext for retaliation and that the retaliation is "but for" her employment action.

As the Court held, even assuming, *arguendo*, that Plaintiff meets the first and/or second element of her *prima facie* case, she cannot demonstrate the third element -- the causal link -- as the undisputed evidence establishes Plaintiff did not have work taken away from her and she was treated the same as other employees regarding overtime. (ROA.3143). The Court further found that the summary judgment evidence also clearly demonstrates Plaintiff was terminated for "Gross

Misconduct" after threatening store manager, Defendant Knowlton, and causing Knowlton to fear for her safety. (ROA.3143). Moreover, as the Court pointed out, Plaintiff filed her EEOC complaint on July 6, 2018 – nearly six whole months before her termination, finding that the temporal proximity of these events alone is insufficient to establish a *prima facie* case of retaliation. (citations omitted) (ROA.3143).

The Court correctly found that Plaintiff simply cannot show that she would not have been terminated "but for" her complaints, there is no causal connection, and ruled that Plaintiff's retaliation claim against Walmart should be dismissed. (ROA.3143-3144, 3187-3190).

**F.    The District Court properly held that Plaintiff's claims against Defendants Knowlton and Jacobs for defamation should be dismissed**

The elements of defamation are: (1) the defendant published a statement; (2) that was defamatory concerning the plaintiff; (3) while acting with malice, if the plaintiff was a public figure, or negligence, if the plaintiff was a private individual, regarding the truth of the statement. *See WFAA-TV, Inc. v. McLemore*, 978 S.W.2d 568, 571 (Tex. 1998).

Under Texas law, a claim for defamation may be avoided if the defendant's statements were qualifiedly privileged. "A qualified privilege protects statements made in good faith on a subject matter in which the author has an interest or with reference to which he has a duty to perform to another person having a

corresponding interest or duty." *Halbert v. City of Sherman*, 33 F.3d 526, 530 (5th Cir. 1994) (citing *Houston v. Grocers Supply Co.*, 625 S.W.2d 798, 800 (Tex. App. – Houston [14th Dist.] 1981, no writ)). Privilege is a question of law when the facts are undisputed and the language used in the publication is unambiguous. *Denton Publ'g v. Boyd*, 460 S.W.2d 881, 884 (Tex. 1970). Finally, a statement, though privileged, may nevertheless be actionable if it is shown that the publisher was motivated by "actual malice" at the time the statement was made. *Frakes v. Crete Carrier Corp.*, 579 F.3d 426, 430 (5th Cir. 2009); *See also Randall's Food*, 891 S.W.2d at 646).

First, Walmart's communications to the Frisco Police Department regarding Plaintiff's threats were protected by qualified privilege. Specifically, a qualified privilege applies to communications "of alleged wrongful acts to an official authorized to protect the public from such acts" so long as the communication was made "with proper motives and without actual malice." *Carlton v. Steele*, 278 Fed. Appx. 352, 354 (5th Cir. Tex. 2008); *see also Marathon Oil Co. v. Salazar*, 682 S.W.2d 624 (Tex. App. – Houston [1st Dist.] 1984) (qualified privilege applied to filing of criminal complaint for suspected employee theft). This privilege is driven by the public policy consideration that individuals must be able "to communicate with peace officers the alleged wrongful acts of others without fear of civil action for honest mistakes." *Id.* (quoting *Zarate v. Cortinas*, 553 S.W.2d 652, 655 (Tex.

Civ. App. 1977)).

Second, Walmart's internal communication and investigation regarding Plaintiff's behavior are protected by qualified privilege. Specifically, a qualified privilege applies to communications made while an employer is investigating employee misconduct as long as the communications are to persons having an interest or duty in the matter to which the communications relate and are without malice. *See e.g., Frakes v. Crete Carrier Corp.*, 579 F.3d 426, 430 (5th Cir. 2009) (citing *Burch v. Coca-Cola Co*., 119 F.3d 305, 323 (5th Cir. 1997); *Mitre v. La Plaza Mall*, 857 S.W.2d 752 (Tex. App. – Corpus Christi 1993, writ denied) (holding that defendant had a qualified privilege to inform its stores of suspected counterfeiters). Therefore, the communications to the threat assessment investigator that form the basis of Plaintiff's defamation claim are protected by qualified privileges.

Finally, Walmart's communications regarding Plaintiff's behavior were not published with actual malice. Under Texas law, "a statement is made with actual malice when the statement is made with knowledge of its falsity or with reckless disregard as to its truth." *Randall's*, 891 S.W.2d at 646. While Texas courts ordinarily place the burden on the defendant to prove lack of malice on summary judgment, in a federal forum it is the plaintiff who must adduce proof of malice in order to avoid summary judgment. *See Duffy v. Leading Edge Prods.*, 44 F.3d 308,

(5th Cir. Tex. 1995) (citing *Celotex Corp.*, 477 U.S. 317); *see also Conti Commodity Services, Inc. v. Ragan*, 63 F.3d 438, 443 (5th Cir. 1995); *Patton v. United Parcel Serv.*, 910 F. Supp. 1250, (S.D. Tex. 1995). Stated differently, to survive summary judgment Plaintiff must prove malice, rather than Walmart having to establish the absence of malice. *Id*. The crux of the actual-malice inquiry is whether the defendant subjectively had "significant doubt about the truth of his statements at the time they are made." *Frakes*, 579 F.3d at 431. Importantly, "a lack of care or an injurious motive in making a statement is not alone proof of actual malice…" *Id*. Stated differently, negligence, error in judgment, lack of investigation, or failure to act as a reasonably prudent person are insufficient to show actual malice. *Duffy v. Leading Edge Prods., Inc.,* 44 F.3d 308, 313-14 (5th Cir. 1995) (citing *Shearson Lehman Hutton, Inc. v. Tucker,* 806 S.W.2d 914, 924 (Tex. App. – Corpus Christi 1991)).

Plaintiff admitted in her deposition that there were only two statements made that form the basis for her claim of defamation against Knowlton and Jacobs: (1) Walmart conducted a "threat assessment" after Plaintiff's threat to Knowlton, and during the threat assessment investigation, Kiser told Plaintiff that Jacobs and Knowlton had relayed to him the statement made by Plaintiff  and (2) the Frisco Police Department was notified of the threat Plaintiff made during their investigation and visit to the Store. (ROA.892).  The communications forming the

basis of Plaintiff's defamation claim against Knowlton and Jacobs are subject to a qualified privilege as agents of Walmart in the scope of their duties.

Further, the Court correctly found that Plaintiff failed to adequately plead the necessary elements of a defamation claim, ruling that Plaintiff's bare allegations do not present facts tending to show the elements of a defamation claim. Moreover, the Court found that Walmart's communications to the Frisco Police Department and its own internal threat assessment team are likely protected by a qualified privilege. Accordingly, the Court properly dismissed Plaintiff's defamation claim. (ROA.3144-3147, 3187-3190).

**G.    The District Court properly held that Defendants Walmart, Knowlton and Stewart are entitled to summary judgment as a matter of law on Plaintiff's ADEA claim**

Plaintiff pled and testified that that the basis for her ADEA claim is that she was given a low assessment and not permitted to participate in the Trainee Position interview.  (ROA.891).   The ADEA makes it "unlawful for an employer . . . to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). To hold an employer liable, "the plaintiff's age must have 'actually played a role in [the employer's decision making] process and had a determinative influence on the outcome.'" *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 141 (2000) (alteration in

original) (quoting *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 610 (1993)). When a plaintiff relies on circumstantial evidence to prove discrimination, the Fifth Circuit applies the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). See *Goudeau v. Nat'l Oilwell Varco, L.P.*, 793 F.3d 470, 474 (5th Cir. 2015) (citing *Bienkowski v. Am. Airlines, Inc.*, 851 F.2d 1503, 1504–1505 (5th Cir. 1988)). While the burden shifts between the parties under this framework, the ultimate burden of persuasion is on the plaintiff to prove "that age was the 'but-for' cause of the challenged employer decision." *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 178–79 (2009).

In order to establish a *prima facie* case of age discrimination, McLemore must establish: (1) that she is over 40 years old; (2) that she suffered an adverse employment action; and (3) a causal connection between her age and the adverse employment action. See *Rachid v. Jack in the Box, Inc.*, 376 F3d 305 (5th Cir. 2004). For the reasons noted above, there is no causal connection between McLemore's age and not being permitted to participate in the Trainee Position interviews. (ROA.883, 1044-1047). Walmart had a legitimate non-discriminatory and non-retaliatory reason to support the employment decisions it made regarding McLemore's employment and Mclemore has failed to identify any evidence in the record to the contrary. (ROA.888, 1021-1025, 1031, 1033-1035, 1048-1049).

Further, Plaintiff's claims under the ADEA against Defendants Knowlton and Stewart fail as a matter of law. Neither Title VII nor the ADEA permits individual liability against employees or supervisors. *Stults v. Conoco, Inc.,* 76 F.3d 651, 655 (5th Cir. 1996) ("Both [Title VII and ADEA] limit liability to employers with more than a minimum number of employees, and both define 'employer' to include agents of the employer. *See Grant v. Lone Star Co.,* 21 F.3d 649, 651-53 (5th Cir. 1994), *cert.* denied, 513 U.S. 1015 (1994) (holding that an individual supervisor who does not otherwise qualify as an employer cannot be held liable for a violation of Title VII). Knowlton and Stewart are both supervisor employees (ROA.468) Moreover, as the Court found, Plaintiff did not allege that Knowlton and Stewart otherwise qualified as "employers" under the ADEA. Accordingly, the Court properly dismissed Plaintiff's ADEA claim against Knowlton and Stewart. (ROA.3147-3151, 3187-3190).

The Could also correctly dismissed Plaintiff's ADEA claim against Walmart, finding that even if Plaintiff did set forth a *prima facie* case, she cannot provide a causal connection – i.e., that she was discriminated against on the basis of age -- and has not shown that she would not have been denied a promotion or discharge "but for" her age. (ROA.3149-31519, 3187-3190).

## H. The District Court properly denied McLemore's motion to amend her complaint to add "Uday Kuchimanchi of Price Waterhouse Coopers of Dallas" as a defendant

In various "motions" Plaintiff sought leave to amend her complaint (ROA.2671-2678, 2682-2689, 2719-2734) to add "Uday Kuchimanchi of Price Waterhouse Coopers of Dallas" as a defendant to the instant suit (ROA.2672, 2686-2687). Plaintiff alleges the proposed amendment was necessary "to fix a misnomer and name the correct defendant" and is substantiated by attached exhibits (ROA.2686). In support of her request, Plaintiff primarily cited authority from the Ninth Circuit Court of Appeals and Federal Rule of Civil Procedure 15, arguing the amendment is not futile, would not prejudice Defendants (ROA.2671-2678, 2682-2689, 2719-2734) and would not change the nature of the relief she seeks (ROA.2721).  However, the Court ruled that Plaintiff has failed to show good cause under Federal Rule of Civil Procedure 16(b) and under the more lenient standard of Rule 15 and is only seeking leave "to assert unfounded claims" (ROA.3151).

Following a discussion and analysis of the requirements of Rule 15 and Rule 16(b), the Court correctly found (1) there is no good cause demonstrated for the amendment and Plaintiff provides no explanation for her untimely requests other than her desire to correct an incorrectly named defendant; (2) the amendment is not important, being based on a printout from the Texas Secretary of State showing Price Waterhouse, L.L.P.'s registered agent is the same corporation as Walmart with no explanation as to how this shows an amendment would name a correct party to

the lawsuit; and (3) the amendment would have prejudiced Defendants by resulting in further delay with the filing of additional dispositive motions and the time and expense to restart the timeline would have been excessively cost prohibitive. (ROA.3151-3154, 3187-3190).

## I.    The District Court properly denied Plaintiff's Amended Motion for Summary Judgment

Plaintiff's Amended Motion for Summary Judgment sought summary judgment as to Defendants' affirmative defenses (ROA.1132-1145), but Plaintiff did not identify on which defenses she believed herself to be entitled to summary judgment, nor did Plaintiff identify any competent summary judgment evidence to support her requested relief. (ROA.3154-3155). The Court found that Defendants' affirmative defenses are irrelevant to disposition of this suit, citing *Jennings v. O'Reilly Auto Enterprises, LLC*, No. 4:17-CV-00837, 2019 WL 286740, at *4 (E.D. Tex. Jan. 22, 2019) (holding same). Accordingly, Plaintiff's Amended Motion for Summary Judgment was properly denied by the Court. (ROA.3154-3155, 3187-3190).

## CONCLUSION

For the foregoing reasons, the District Court properly granted summary judgment in favor of Appellees, denied summary judgment in favor of Appellant and dismissed all of Plaintiff's claims with prejudice.

Respectfully submitted,


/s/Nancy L. Waters
NANCY L. WATERS
ATTORNEY-IN-CHARGE
State Bar No. 00787352
nwaters@gpd.com
JAMES N. ZOYS
State Bar No. 24028155
jzoys@gpd.com
GEARY, PORTER & DONOVAN, P.C.
16475 Dallas, Parkway, Suite 400
Addison, Texas 75001-6837
(972) 931-9901
(972) 931-9208 (Fax)

ATTORNEYS FOR APPELLEES

## **CERTIFICATE OF SERVICE**

I hereby certify that, on April 26, 2021, I electronically filed the foregoing BRIEF OF APPELLEES with the Clerk of the Court for the United States Court of Appeals for the Fifth Circuit by using the appellate CM/ECF system.

I further certify that on April 26, 2021, a copy of the foregoing BRIEF OF APPELLEES was served on *Pro Se* Appellant via Certified Mail – Return Receipt Requested.

Rhonda M. McLemore
1801 McCord Way #137
Frisco, Texas 75033
Onlyjust47@aol.com

/s/Nancy L. Waters
NANCY L. WATERS
JAMES N. ZOYS

### <u>CERTIFICATE OF COMPLIANCE WITH RULE 32(a)</u>

Certificate of Compliance With Type-Volume Limitation,
Typeface Requirements, and Type Style Requirements

1.  This brief complies with the type-volume limitation of FED. R. APP. P. 32(a)(7)(B) because:

    ☒ this brief contains 12,514 words, excluding the parts of the brief exempted by FED. R. APP. P. 32(a)(7)(B)(iii).

2.  This brief complies with the typeface requirements of FED. R. APP. P. 32(a)(5) and the type style requirements of FED. R. APP. P. 32(a)(6) because:

    ☒ this brief has been prepared in a proportionally spaced typeface using Microsoft Word for Microsoft 365 MSO in 14 pt. Times New Roman (and 12 pt. for footnotes).

3.  As permitted by FED. R. APP. P. 32, the undersigned have relied upon the word count feature of the word processing system used in preparing this Certificate.

/s/Nancy L. Waters
NANCY L. WATERS
JAMES N. ZOYS